United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LANELL MONIQUE JONES,

      Plaintiff,

    vs.

CITY OF OAKLAND, *et al.*,

      Defendants.

Case No.: **11-cv-4725 YGR**

ORDER #6 RE: TRIAL EXHIBITS AND
MOTIONS IN LIMINE

    This Order follows a series of pre-trial conferences held by the Court on February 22, 25, and March 5, 11, and 15, 2013, as well as orders regarding the pretrial filings issued on February 25 (Dkt. 62), March 7 (Dkt. 77 [Order #2]), March 8 (Dkt. 93 [Order #3] and Dkt. 94 [Order #4]); March 11 (Dkt. No. 97 [Order #5]).  The Court has carefully considered the briefing and arguments of the parties, and rules as follows on Defendants' Motions in Limine Nos. 1 and 3, and on the parties' objections to proposed exhibits:

I.    **Motion In Limine No. 3 and Exhibits 13 and 16:**

    Defendants' Motion In Limine Number 3 seeks to exclude any evidence or argument concerning the "Nightrider" officers, those officers' criminal prosecution, and the civil lawsuit of *Delphine Allen, et al. v. City of Oakland, et al.*, Case No. 00-cv-4599 TEH (also known as "the Riders Case"), including settlement of that case or subsequent monitoring reports required as part of those proceedings.[1]  Such documents would include the documents identified as Plaintiff's Exhibits 13 and 16.

---

[1] The parties agree that neither of the Defendant officers here was one of the "Nightrider" officers involved in those prior criminal and civil cases.

United States District Court
Northern District of California

As indicated in Order #4, Plaintiff listed "Hon. Henderson's Order re: City of Oakland Compliance Director" as her Exhibit 13.  Thereafter, she presented several hundreds of pages of court documents from multiple docket entries consisting of six (6) separate and distinct documents, Exhibits 13(A) - 13(F).  The Court ordered Plaintiff to mark the separate exhibits and explain the basis on which she sought to admit them.  The Court, in its Order #5, excluded Exhibits 13(A) and 13(D) for the reasons stated therein.  As to the other documents, the Court allowed Plaintiff additional time to identify the specific pages, the specific purpose for which they were offered, and the nexus to liability in this action.  Defendants were then permitted to offer their response brief, and the parties permitted to argue the matters at the (Fifth) Pre-Trial Conference hearing on March 15, 2013.

A.     **Exhibit 13**

Exhibits 13(B), (C), (E) and (F), documents offered by Plaintiff from the Riders Case may not be used in this action.  Exhibit 13(B), the Negotiated Settlement Agreement ("NSA"), on its face states that it cannot be used as evidence of liability against the City.  As Plaintiff has pointed out, the NSA was made an order of the Court in the Riders Case.  The NSA provides that "[n]othing in this Agreement ... shall be construed as an admission of liability or evidence of liability under any federal, state or local law, including 42 U.S.C. § 1983 ...."  (NSA at page 1, line 26-page 2, line 2).  The NSA further states that:

> This Agreement is enforceable only by the parties, as described elsewhere in this document. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for the purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement.

(NSA at page 2, lines 22-26.)  Plaintiff argues that these provisions only prevent another party from *enforcing* the NSA, which she is not seeking to do.  Further, Plaintiff argues that the NSA is not offered as evidence of the City's liability, but as evidence of notice to the City that there were "problems and issues" with the Oakland Police Department.  Following from the notice in the NSA, she argues, Exhibits 13(C) [AMOU], 13(E) [Audit], and 13(F) [Hon. Henderson's Order Re

1   Compliance Director] show that the City failed to comply with the NSA and created an atmosphere in

2   which the alleged constitutional violations by the Defendant Officers occurred.

3          First, Plaintiff's notice versus liability argument is a distinction without a difference.  She is

4   plainly seeking to offer the NSA and documents related to its compliance to establish the City's

5   liability in this action, a use that is prohibited by the terms of the NSA, and thereby the court's order

6   in the Riders Case.  Likewise, offering evidence to show that the City failed to comply with the

7   agreement is prohibited, since the probative value of the lack of NSA compliance presumes that the

8   NSA's terms can be used to establish liability.  And, to be clear, Plaintiff has not offered any portion

9   of the NSA, or the documents following therefrom, that would have put the City on notice with

10  respect to any conduct *of the Defendant Officers here*.

11         In addition to the fundamental problems with offering the NSA and other documents for a

12  purpose prohibited by the agreement, the Court finds that the documents are otherwise inadmissible.

13  Plaintiff contends that the Court can take judicial notice of Exhibits 13(B), (C), (E), and (F), but

14  judicial notice can only be taken for the limited purpose of establishing the existence of those

15  documents, not for the truth of any facts stated therein.  *Lee v. City of Los Angeles*, 250 F.3d 668,

16  689-90 (9th Cir. 2001).  The purposes for which Plaintiff offers the Riders Case documents far

17  exceed the limited scope of judicial notice.

18         Plaintiff also contends that these are self-authenticating documents and fall under Rule

19  803(8)'s hearsay exception for public records.  Plaintiff concedes that no witness can authenticate

20  these documents.[2]  As to self-authentication, Plaintiff has not shown how these exhibits are self-

---

22         [2]  Plaintiff has argued repeatedly that the Court "excluded" two witnesses, Captain Erise
23  Joyner and Sergeant Charles Abdullah.  In addition, Plaintiff's argues in her brief filed March 13,
    2013, that she is being prejudiced by the exclusion of Coroner Robert Zedelis and Officer Daniel
24  Higgins.  (Dkt No. 100 [Plaintiffs Pre-Trial Conference Brief # 3] at p. 8)  Plaintiff's argument that
    these individuals were excluded as witnesses overlooks the fact that she never included these
25  witnesses on any proposed witness list.  (*See* Docket Nos. 41 [filed February 15, 2013] and 45 [filed
    February 21, 2013].)  Plaintiff argues that she mentioned their names in a brief she filed and that
26  Defendants were aware that these individuals had information about the case.  These arguments do
    not relieve Plaintiff of the obligation to disclose them as witnesses and list them on her witness list in
27  a timely manner.  The Court is not required to comb the record to determine who Plaintiff might be
    intending to call as a witness, and opposing parties are entitled to know the names of the witnesses
28  Plaintiff intends to call in her case-in-chief in advance.

United States District Court
Northern District of California

United States District Court
Northern District of California

authenticating under Rule 902, since they are not sealed or certified copies of any records, official publications or documents fitting under any other category stated therein.

Moreover, the hearsay exception cited by Plaintiff is unavailing.  Rule 803(8) provides an exception from the hearsay exclusion for a "record or statement of a public office if. . . (A) it sets out the office's activities or . . . factual findings from a legally authorized investigation; and (B) neither the source of the information nor other circumstances indicate a lack of trustworthiness."  FRE 803(8).  Exhibits 13(B), 13(C), and 13(F) do not meet the first part of the test as they are not statements of a public office's activities or a legally authorized investigation.

While Exhibit 13(E), the Audit Report, might qualify as a public record of "activities" or an "investigation" by the Oakland Police Department under FRE 803(8), it suffers from the same authentication problems as the other documents, as well as raising particular relevance concerns. Exhibit 13(E), an audit report, is dated August 14, 2012, and purports to be an audit of "use of force incidents that occurred April 2011 through June 2011," post-dating the November 8, 2010 incident at issue here.  Plaintiff has not offered a nexus or explanation of how a report concerning a different, later time period might support her proffered theory that these exhibits establish the City's knowledge, deliberate indifference, and failure to correct or train, such as would establish the City's liability for the November 8, 2010 incident.

Finally, beyond the problems already identified, the Court finds that admission of the Riders case documents would be more prejudicial than probative under FRE 403.  Admitting the documents alone, without any context or explanation of their meaning by any witness, has the strong potential to confuse and mislead the jury, as would Plaintiff counsel's unsupported "argument" regarding the meaning of the same.

**B.    <u>Exhibit 16</u>**

With respect to Exhibit 16, the Independent Monitor's Fifth Quarter Report in the Riders Case, Plaintiff offers this document to establish "that the Oakland Police Department was not in compliance with the NSA agreement during the Reporting Period of October 1, through December 31, 2010," which lack of compliance "substantially contributed to the events leading to the death of the decedent Derrick Jones."  (Dkt. 100 [Plaintiffs Pre-Trial Conference Brief # 3] at 8.)  Like the

documents in Exhibit 13, use of the document to establish the City's liability here is prohibited by the terms of the NSA, since any statements of compliance or non-compliance necessarily rely on the terms of the NSA itself.

As with the documents in Exhibit 13, Plaintiff has not shown how the document can be self-authenticating under any provision of FRE 902, and does not offer a testifying witness to establish authenticity under FRE 901.

In addition to these authentication problems, admission of a report produced in the Riders case pursuant to the NSA, in a context where those documents themselves are not admissible, would be more prejudicial than probative under FRE 403.  Admitting the report without any witness to provide context or explanation would very likely confuse and mislead the jury.  The Independent Monitor offers opinions about the City's compliance with the NSA overall, with specific tasks therein, and in comparison to earlier reports.  Standing alone, it would give jurors an incomplete understanding of the meaning of the tasks, status, and progress reported therein.[3]

Based upon the foregoing, Defendants' Motion in Limine No. 3 is **GRANTED.**  Exhibits 13(B), 13(C), 13(E), 13(F) and 16 are **EXCLUDED** from evidence.  In addition, **PLAINTIFF IS PROHIBITED** from pursing any lines of questioning, offering evidence or making argument concerning the Riders Case, its settlement or subsequent orders concerning that settlement, as well as the "Nightrider" officers and their criminal prosecution.

//

//

//

---

[3]  In light of other fundamental issues with the admissibility of Exhibit 16, the Court declines to reach the issue of whether it satisfies the hearsay exception in FRE 803(8)(A).  The Ninth Circuit's decision in *Montiel v. City of Los Angeles*, 2 F.3d 335 (9th Cir. 1993) is distinguishable, since the court there assumed the document at issue, the report of the Christopher Commission, met Rule 803(8)(A)'s requirement that the offering party establish that the document was a public record.  The *Montiel* court held that the district court erred because it should have presumed that the public report was trustworthy and put the burden of establishing otherwise on the opponent of the evidence.  *Id.* at 341.  Here, defendants have raised some issues with respect to its trustworthiness, but the issue has not been fully litigated.  The Court need not decide this issue since Exhibit 16 is not admissible for other sufficient and independent reasons.

United States District Court
Northern District of California

**II.** **Motion in Limine No. 1, Exhibit 14 (now Exh. 200-273 *et seq.*)**
   **and Exhibit 15 (now Exh. 300-336 *et seq.*)**

Defendants' Motion in Limine No. 1 seeks to prohibit any statement, suggestion, or argument by plaintiff, plaintiff's counsel, and plaintiff's witnesses concerning the Internal Affairs (IA), Citizen Police Review Board (CPRB) and/or personnel histories of the police officers who responded to the scene of the incident in this case including but not limited to Defendants Daza-Quiroz and Perez-Angeles and any and all of the Oakland Police Department Officers who may testify at trial. The motion is made on the grounds that such evidence, testimony, or argument is irrelevant, or alternatively, is more prejudicial than probative, and should not be admitted under Federal Rule of Evidence ("FRE") 401 and 403. The motion is made on the additional grounds that such evidence, testimony, or argument is inadmissible "prior acts" evidence under FRE 404.

In its Order #4, the Court noted the Plaintiff had identified, under the heading of Exhibits 14 and 15, numerous discrete documents, totaling several hundred pages, from the officers' internal affairs history. In doing so, she had not indicated which documents she intended to use, or the basis upon which those documents could be authenticated, relevant, and admissible for purposes other than character evidence prohibited under FRE 404. Plaintiff was ordered to separate the individual documents she wished to admit from Exhibits 14 and 15, renumbering them as exhibit numbers 200 *et seq.* and 300 *et seq.*, respectively (collectively, "the IA file evidence"). Plaintiff was also ordered to identify, no later than March 11, 2013: (1) the specific information she wished to introduce; (2) its connection to the action here; and (3) an offer of proof that its admission with the Federal Rules of Evidence, and to file that information. At the Fourth Pretrial Conference on March 11, Plaintiff sought and was granted an extension to March 13, 2013, to comply with Order #4.

Plaintiff's March 13 filing (Dkt. 101) contends the documents comprising these exhibits are admissible for purposes of impeachment under FRE 607 and 608, are admissible to prove character under FRE 405, and that certain documents are admissible under FRE 407 (subsequent remedial measures).[4] At the March 13 hearing, and in her additional filing on March 13 (Dkt No. 102),

---

[4] In oral argument and in her previous filings, Plaintiff also contended the documents are admissible under FRE 406 as evidence of a habit or routine practice. Plaintiff appears to have abandoned that argument in her March 13 filing (Dkt. 101), and has modified her argument that she

Plaintiff explained the areas of inquiry on which she proposed to introduce and/or rely on the documents in Exhibits 14 and 15.  The Defendant Officers filed their response on March 14, and the Court heard the parties' additional arguments on March 15.

Under FRE 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Likewise, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FRE 404(b)(1).  FRE 404 and 405 provide for specific qualifications and exceptions to this general rule. So, for example, prior acts may be admissible when offered to prove something other than character, such as knowledge, plan, notice, or intent.  FRE 404(b)(2).  And, when character or a character trait is an essential element of a claim or defense, FRE 405(b) permits evidence of specific instances of conduct to prove that character or character trait.  FRE 407, also cited by Plaintiff here, provides that, evidence of measures that were later taken that would have made an earlier injury or harm less likely to occur, that evidence is not admissible to prove negligence or culpable conduct, but may be admitted for other purposes such proof of ownership, control, or the feasibility of precautionary measures where those matters are excluded, or as impeachment.

Plaintiff identified seven areas of inquiry related to Exhibits 200-273 and 300-336:

1. Task 41 Non-compliance during the 5th Quarterly Reporting Period.
2. (A) Total Number of Complaints: (B) Proportionality of Use of Force, (C) In Compliance/Not In Compliance [with the NSA].
3. Leslie Allen Deadly Force Shooting July 31, 2008
4. Johnson use of force incident that occurred on November 6, 2010, two days before lethal shooting of the decedent Derrick Jones.
5. Summary of Tasks Oakland Police Department not in compliance with during the NSA agreement
6. Number of Investigations and the reported findings i.e. Exonerated, sustained, unfounded, no recommendations; the fact that the department was not in compliance with those Tasks represented by the NSA and quarterly report.

does not seek to have all the documents admitted as much as she would like to pursue lines of questioning on the topics stemming from the documents.  The Court finds that Plaintiff has not established that the documents at issue would be probative of any habit or routine practice of the Defendant Officers relevant to this litigation.

7. Evidence of demeanor/conduct toward others/intimidation of complaining witnesses: Specific instances of use of force, unlawful arrests and complaints by African Americans of specific instances of the described conduct.

(Dkt. No. 102, Plaintiff's Pretrial Conference Itemization of Proposed Areas of Inquiry, etc..)

As an overarching matter, the Court finds that Plaintiff is seeking to admit the IA file evidence against the Defendant Officers for purposes prohibited by FRE 404(a)(1) and 404(b)(1). The character or character trait of the Officer Defendants is not an element of the § 1983 claims here, and therefore is not a permitted use of character evidence under FRE 405(b).  Moreover, the Court sees no connection between FRE 407 and the documents here, as Plaintiff points to nothing in these documents relating to any subsequent remedial measures by any defendant, much less any exception to the rule that such evidence is generally excluded.

The Court turns to the specific purposes for which Plaintiff offers the evidence of other acts in the IA file evidence.  Certain of these areas of inquiry are improper because they rely on the terms of the NSA and reports of compliance with those terms.  As set forth above, evidence regarding the NSA is excluded.  Moreover, Plaintiff has not offered any witness who could testify as to the connection between facts or conclusions set forth in these documents and any portion of the NSA or compliance reports concerning the NSA.  Therefore, to the extent the documents in these exhibits are offered to show that the City was not in compliance with the NSA or that the NSA's requirements applied to the matters set forth in the documents, under Areas of Inquiry Nos. 1, 2(C), 5, and the compliance portion of 6, they are likewise excluded.

As to Areas of Inquiry Nos. 2(A) and (B), use of the documents to establish the number of complaints or reports concerning the Defendant Officers is excluded under FRE 401 and 403. Without any context to establish the number of complaints relative to the officers' duties, numbers of persons with whom they have come in contact in carrying out those duties, and numbers of complaints against other officers or a reasonable officer, the documents are likely to mislead and confuse a jury, and therefore more substantially more prejudicial than probative on the matters at issue in this litigation.  Likewise, admitting the documents to show whether or not the use of force was proportional to the circumstances of a particular incident would require additional contextual and comparative evidence regarding each incident, and would essentially require mini-trials of other

United States District Court
Northern District of California

United States District Court
Northern District of California

1    unrelated incidents, as to which Plaintiff has not identified any testifying witnesses.  Aside from the

2    tremendous expenditure of time that would be involved to undertake numerous trials within a trial,

3    attempting to do so relying solely on the documents in the IA file evidence would be incomplete,

4    confusing, and misleading for a jury.  Moreover, use of these documents for the purpose of

5    establishing that the officers previously used force that was excessive in proportion to the

6    circumstances of the incidents, in the absence of contextual or expert opinion evidence, would be

7    substantially more prejudicial than probative.

8         Plaintiff's Areas of Inquiry Nos. 3 and 4 concern two specific prior uses of deadly force by

9    the Defendant Officers.  To the extent Plaintiff seeks to admit the documents to show that the

10   Defendant Officers' actions in the incident at issue in this litigation were consistent with those prior

11   acts, this would, again, be a prohibited use under FRE 404(a) and 404(b)(1).  To the extent offered

12   against the officers for any other purpose, under FRE 404(b)(2), Plaintiff has not articulated what

13   those purposes might be, nor has she established that the circumstances in those incidents bore

14   material similarities to the incident at issue in this litigation.  Finally, to the extent the documents are

15   offered to establish that the City was aware of the incidents and did not take proper action, there are

16   no witnesses or other evidence proffered to establish either that the City was on notice of improper

17   conduct or that the City failed to respond appropriately.  In the absence of evidence establishing a

18   nexus to the City's *Monell* liability, admission of documents concerning these two specific prior

19   incidents would be substantially more prejudicial than probative.

20        Under Area of Inquiry No. 6, in addition to the NSA compliance basis (addressed above),

21   Plaintiff, also seeks to admit the documents for purposes of showing the "[n]umber of Investigations

22   and the reported findings i.e. Exonerated, sustained, unfounded, no recommendations."  (Dkt. 102.)

23   Without an identified witness to explain any of the documents stating the findings and summaries of

24   findings, the numbers of investigations and various findings of those investigations standing alone

25   does not provide evidence material to any matter relevant to the claims.  And, like Areas of Inquiry

26   Nos. 2(A) and 2(B), in the absence of any context to understand the nature of the underlying

27   incidents, how those findings were reached, and the meaning of the findings, the documents are likely

28   to be confusing and misleading.  Plaintiff's purpose in offering the evidence against the officers again

falls squarely within the uses prohibited by FRE 404(a) and 404(b)(1).  To the extent the documents are offered to establish that the City is liable for not taking properly investigating or taking action on account of the investigations, there are no witnesses or other evidence establish such a connection.  In light of the foregoing, admission of these documents for purposes of showing the number of investigations and their findings would be substantially more prejudicial than probative.

Plaintiff's final Area of Inquiry, No. 7, is to establish "[e]vidence of demeanor/conduct toward others/intimidation of complaining witnesses," more specifically "use of force, unlawful arrests and complaints by African Americans."  Offering this evidence for the purpose of establishing prior conduct and "demeanor" of the Officer Defendants falls directly within the prohibitions on character evidence under FRE 404(a) and 404(b)(1).  Plaintiff has not identified any witnesses who can speak to any incidents or complaints stated within any of the documents, nor has she identified any witnesses or evidence to establish the City's notice of or failure to take action such conduct or complaints.  Indeed, Plaintiff has not identified which of the 111 documents from the IA files would be relevant to this Area of Inquiry.  Thus, the Court finds that admission of the documents for this purpose, to the extent they might be at all probative of any matter at issue, would be substantially more prejudicial than such probative value.

The Court further notes that, with very few exceptions, the IA file documents at issue cannot be authenticated by any testifying witness.  Of the documents identified on Plaintiff's Docket No. 101, only 17 of the 111 documents appear to have been authored by any witness expected to testify.  In addition, all the documents are hearsay, most hearsay within hearsay.  Plaintiff has argued that the documents all fall under the hearsay exception for business records, FRE 803(6), and that they can all be authenticated under FRE 901(b)(4), as documents with "distinctive characteristics."  However, Plaintiff has not identified any witnesses or evidence that would establish admissibility under either of these rules.

Accordingly, Defendant's Motion in Limine No. 1 is **GRANTED**.  Plaintiff is prohibited from making any inquiry, statement, or argument concerning the IA, CPRB and/or personnel histories of the Defendant Officers.  The defendant officers are expected to testify about the November 8, 2010 incident as well as their training.  Should questioning in these areas open the door to use of

documents for purposes of impeachment, Plaintiff may make an offer of proof as to the specific

documents she seeks to admit.  To the extent offered for any reason other than impeachment, the

documents in Exhibits 200-273 and 300-336 are **EXCLUDED**.

**III.    Other Exhibits**

      **A.    Rulings on Plaintiff's Exhibits**

          1.    Plaintiff withdrew Exhibit 1;

          2.    Defendants stipulated to admissibility of Exhibits 4(A), 4(B), 4(C), 6(B), 6(F),

7(A), and 7(B);

          3.    Plaintiff's renewed argument for admission of Pages 2 and 3 of Exhibit 5,

previously excluded by the Court, is **DENIED**.  Those pages are excluded in the absence of testimony

to lay a sufficient foundation for their admissibility.

          4.    Defendants' objections to Exhibits 4(J), 6(C), 6(D), and 6(E) under Rule 403

are **OVERRULED**.

          5.    Defendants' objections to Exhibits 8(A)(1) and 8(B)(1) are **SUSTAINED** and

those exhibits are excluded.

          6.    Defendants' objections to Exhibit 9(A), the entirety of the Coroner's Report

are sustained with the exception that ruling is reserved as to photographs showing the location of

bullet wounds after an offer of proof by Plaintiff.

          7.    Defendants' objections to Exhibit 9(B), the certified copy of a portion of the

Coroner's Report are **OVERRULED**.  The exhibit is admissible as a self-authenticating document under

Rule 902(2).

          8.    The Court previously ruled that Plaintiff's Exhibit 10(A), the text message

portion of Exhibit 10, was offered in its entirety by Plaintiff and that, upon the City's withdrawal of

its objection to the exhibit if offered in its entirety under FRE 106, Plaintiff subsequently requested to

limit or redact that exhibit.  The Court stated that it declined to allow Plaintiff to redact the exhibit at

that time, and that the exhibit could come in its unredacted form for use by any party, but a proper

foundation for admissibility must still be offered.  Plaintiff now argues that she can establish a basis

for admitting the portions of the exhibit under an exception to the hearsay rule, FRE 804(b)(4)(A) and

United States District Court
Northern District of California

United States District Court
Northern District of California

(B), but only those portions should be admitted.  Rule 804 generally concerns exceptions to the rule against hearsay when a declarant is unavailable as a witness.  The subsection cited by Plaintiff, FRE 804(b)(4), permits statements about:

> (A) the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or
> (B) another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage or was so intimately associated with the person's family that the declarant's information is likely to be accurate

Plaintiff argues that the text messages between herself and decedent qualify under FRE 804(b)(4)(A) and (B) because they are offered to show the decedent's marriage to her, and because she is a person related to decedent/declarant by marriage.  First, Plaintiff's reasoning is circular: she argues that because she is a person related to declarant by marriage, she can testify to his out-of-court statements that he was married to her.  This does not appear to be a hearsay exception contemplated by the rule.  Indeed, the purposes for which the text messages are offered appear to exceed a mere statement of personal or family history.  Moreover, excluding the other portions of the document would be contrary to the principle stated in FRE 106, that is, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."  In fairness, if Plaintiff seeks to admit Exhibit 10(A) to establish the decedent's personal history, *i.e.* that she and decedent were married, Defendants should, in fairness, be permitted to introduce any other parts of that writing that might contradict or qualify that evidence.  To the extent that Plaintiff seeks to offer any part of Exhibit 10(A) into evidence, Defendants may thereafter introduce the entire document.  A "redacted version" (which the Court notes has never been provided) will not be allowed.

9.     Defendants' objections to Exhibit 10(B), a photograph, are **OVERRULED** with the caveat that Plaintiff must lay a foundation for its admission.  Likewise, and as stated in the

12

Court's March 8, 2013 Order #4 Re: Trial Exhibits and Motions in Limine, Exhibits 10(C)-10(F) are admissible so long as Plaintiff lays an adequate foundation.

10.     The Court reserves ruling on Exhibits 4(D), 4(E), 4(F), 4(G), 4(H), 4(I), 11(A)(1) and (2), 11(B)(1) and (2).

**B.     Rulings on Defendants' Exhibits**

1.     Previously the Court ruled that Defendants' attempt to withdraw Exhibit 104, which Defendants identified as two "Photos of Barbershop," would not be permitted because Plaintiff had stipulated to their admission, and had relied on that stipulation.  At the March 15 hearing, the parties clarified that they had not identified particular photographs in their discussions regarding Exhibit 104.  In light of this information, the Court has permitted Plaintiff to identify two photographs of the barbershop by the time of continued Pretrial Conference set for March 18, 2013, at 10:00 a.m.  The Court will consider allowing this additional exhibit at that time.

2.     Plaintiff's objection to Exhibits 106 and 107 (divorce filings) on the grounds that Defendants' failed to disclose these documents in their FRCP 26(f) disclosures is overruled.  The Court notes that the exhibits are not certified copies and are not self-authenticating.  The Court reserves further ruling as to the admissibility of the exhibits.  The line of questioning regarding those divorce filings is allowed.

3.     The parties previously stipulated to Exhibit 102(D).

4.     Plaintiff's objections to Exhibit 108 (photographs) are **OVERRULED**.

5.     The Court reserves ruling on all other exhibits.

**IV.     Additional Orders**

1.     Visuals for Plaintiff's Opening Statement

Defendants' objection to use of the autopsy photograph as part of Plaintiff's opening statement is sustained.  Plaintiff may use one of the photographs from the scene in Exhibit 6 that the Court has ruled will be admitted.  Defendants' objection to the use of the funeral program is overruled.

//

//

United States District Court
Northern District of California

2.      Conduct of Trial

Parties are again reminded that each side has a limit of 12 hours for all aspects of trial, including opening and closing statements.  Parties are cautioned that failure to manage one's hours may result in the denial of examination of witnesses.

As previously ordered, all parties must be ready to proceed at 8:30 a.m. every day of trial. Time will be assessed against any party who is not prepared.  A party may be deemed to have rested their case if their witnesses are not prepared to testify at the conclusion of the preceding witness's examination.

In light of the parties' acrimonious relationship during this litigation, parties shall file with the Court the list of witnesses to be called 24 hours prior to their testimony.

Jury selection shall begin on Tuesday, March 19, 2012.  Plaintiff shall be prepared to call her first witnesses at 8:30 a.m. on Wednesday, March 20, 2012.

**IT IS SO ORDERED.**

Dated: March 17, 2013

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

United States District Court
Northern District of California

14